OPINION.
{¶ 1} Plaintiff-appellant the State of Ohio appeals from an order of the trial court suppressing evidence. The State contends that the trial court erred by finding that the evidence was obtained as the result of an unlawful search. We conclude that the evidence in the record supports the trial court's conclusion. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} At about 9:00 one night in December, 2002, nine Dayton police officers arrived at 1319 Superior Avenue, to execute a search warrant. The warrant authorized them to search the residence for evidence of drug trafficking and drug possession.
 {¶ 3} Upon arriving at the house, the police lined up in the back, preparing to go around the house and enter through the front door. The first two officers in line were Detectives Timothy Braun and Douglas Hall. Also near the front of the line were two officers carrying the equipment used to break open doors, a "hooligan," which is basically a pry bar, and a ram. At the end of the line was Lieutenant Michael Wilhelm, who carried a battery-operated megaphone.
 {¶ 4} The line of officers proceeded from the back of the house around to the front porch. On the front porch, Yalonda Hunter and anther woman were talking to the occupants of the house through the front door. The interior door of the house was open, and the exterior door, which was made of plexiglass and provided a clear view of the occupants inside, was closed. As the police reached the front porch, they were spotted by Yalonda Hunter and her companion, who began screaming "police" and "po-po," which is a slang term for police. Several things then began to happen almost simultaneously. Lieutenant Wilhelm began announcing quickly and repeatedly over the megaphone, "1319 Superior, Dayton Police, search warrant." The front of the line reached the door, through which they could see the occupants of the house, including Hunter and his cousin, Tia Hunter. Detective Braun knocked quickly. The occupants of the house looked surprised and stared at the police with wide eyes. Detective Braun told the officers operating the hooligan to set the tool in the door, and the officers broke open the door and entered the residence. As they were entering, Detectives Braun and Hall observed Hunter remove something from his pocket and place it in the cushions of the sofa on which he sat. They testified that they had been unable to see what the object was, but that they had been concerned that Curtis might be arming himself. The total time from when the first officers reached the porch until they made entry into the residence was less than ten seconds. The time from when Detectives Braun and Hall reached the glass door until they made entry was two to five seconds. The announcement had been made over the megaphone two to five times before the police broke open the door.
 {¶ 5} Upon entering the residence, the police immediately secured the occupants. The officers found approximately twenty grams of crack cocaine between the cushions of the sofa where the officers had observed Hunter stuff something. Hunter was arrested, and read his rights underMiranda v. Arizona (1966), 384 U.S. 436. When asked about what the officers observed upon entry and the crack cocaine that was found between the couch cushions, Hunter indicated to the police that he did not stuff anything in the couch, and that he knew nothing about the crack cocaine that the police found.
 {¶ 6} Hunter was charged by indictment with possession of crack cocaine in an amount equal or great than ten grams, but less than twenty-five grams. He moved to suppress the evidence obtained as the result of the allegedly unlawful search and seizure. Following a suppression hearing, the trial court found Hunter's motion to be well-taken, and suppressed the evidence. From the order suppressing evidence, the State appeals.
 II {¶ 7} There is one assignment of error, as follows:
 {¶ 8} "The trial court erred when it sustained Hunter's motion to suppress as the police complied with Ohio's `knock and announce' statute before gaining entry to execute the search warrant, and because a `knock and announce' violation does not invoke application of the exclusionary rule."
 {¶ 9} The State argues that the evidence in the record does not support the trial court's conclusion that there was no constructive refusal of admission to the premises; that, in any event, there were exigent circumstances justifying the officers' entry; and that the exclusionary rule is inapplicable because the evidence seized would inevitably have been discovered, despite the alleged violation of the "knock and announce" rule. The State made the exact same arguments in the companion case of State v. Tia Hunter (August 8, 2003), Montgomery App. No. 19801, in which it was appealing from a suppression order entered on behalf of one of the other occupants of the house. We rejected all of those arguments, and affirmed the suppression order in that case. Upon the authority of State v. Tia Hunter, supra, which we approve and follow, we also reject the identical arguments the State makes in this case. Accordingly, the State's sole assignment of error is overruled.
 III {¶ 10} The State's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WOLFF, JJ., concur.